```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                        :
ANTHONY RAY PARROTT                     :
                                        
     v.                                 :   Civil Action No. DKC 12-2340
                                            Criminal No. DKC 08-0328-003
                                        :
UNITED STATES OF AMERICA                
                                        :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is the motion of Petitioner Anthony Ray Parrott ("Mr. Parrott" or "Petitioner"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 776).[1] Also pending is Petitioner's motion for leave to conduct discovery. (ECF No. 780). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be denied.

**I.   Factual Background**

As a result of extensive drug-related criminal activities, Petitioner was charged in a multi-defendant superseding indictment with one count of conspiring to distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine and 50 grams or more of a mixture or substance containing a

---

[1] All citations to electronic court filings refer to the docket in the criminal case.

detectable amount of cocaine base, commonly known as crack, in violation of 21 U.S.C. § 846.  (ECF No. 339).  On April 30, 2010, one week before his trial was set to begin, Petitioner pled guilty to count one of the superseding indictment.  (*See* ECF Nos. 528 & 529).

Petitioner stipulated to the following facts as part of his plea agreement:

> Anthony "Tony" PARROTT combined, conspired, confederated, and agreed with John Cox and others to distribute and possess with intent to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base, commonly referred to as crack.  The conspiracy began at least in February 2007 and continued through February 2009.
>
> Cox was the head of a Suitland, Maryland-based drug trafficking organization.  During the conspiracy, Cox received multiple kilograms of cocaine from his primary source of supply David ZELLARS, and then sold the cocaine to several regular drug customers in the Washington, D.C. metropolitan area.  John Cox used apartment T-2 located at 5088 Silver Hill Court, Suitland, Maryland to stash and distribute cocaine to his customers.
>
> Tony PARROTT, Cox's brother, would purchase cocaine from Cox and sell it to regular customers in the Washington, D.C. metropolitan area.  PARROTT also stashed cocaine at apartment T-2, and, at times, Cox and PARROTT assisted each other in selling the cocaine.  PARROTT also stashed cocaine and drug proceeds at another apartment located in southeast Washington, D.C. During the conspiracy, Cox would "front"

> cocaine to PARROTT, who then at times owed payment to Cox.
>
> PARROTT and Cox sold cocaine to some of the same customers. At times during the conspiracy when Cox was unable to obtain cocaine, PARROTT purchased cocaine from other sources. PARROTT would then sell the cocaine to his drug customers.
>
> On several occasions, PARROTT sold/brokered ¼ kilogram of cocaine for $7,000, 1/8 kilogram of cocaine for $3,500, and 62 grams of cocaine for $1,700 to David Howard, Peter Purvis, and others. PARROTT also sold quantities of crack cocaine, and would sell 31 grams of crack for $900 and 62 grams of crack cocaine for $1,800.
>
> On one occasion later in the conspiracy, PARROTT brokered a transaction involving 1/8 kilogram of cocaine for $3,800 from an unknown source of supply arranged through Trenton Snyder. PARROTT then sold the cocaine to his drug customers. PARROTT later attempted to purchase a kilogram of cocaine for $28,000 from the unknown source. That deal did not happen because the source sold the cocaine to another customer.
>
> From March 2008 to July 2008, the court authorized wire interceptions on three phones used by Cox and two phones used by Tony PARROTT. During that time, PARROTT was intercepted daily discussing and managing his drug trafficking activities. PARROTT used his cellular telephones to arrange drug sales with his drug customers.

(ECF No. 529-1). Petitioner was on supervised release when he committed the underlying offense.

Petitioner was sentenced on September 12, 2011 to 90 months imprisonment and five (5) years of supervised release, and

3

ordered to pay a special assessment of $100.  (ECF No. 701).  On August 7, 2012, Petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 776).  The Government opposes the motion.  (ECF No. 797).  Petitioner also moved for discovery.  (ECF No. 780).  On March 20, 2015, the court issued an order reducing Petitioner's sentence to seventy-two (72) months pursuant to 18 U.S.C. § 3582 as a result of Amendment 782 to the U.S. Sentencing Guidelines. (ECF Nos. 380 & 381).

**II.  Standard of Review**

28 U.S.C. § 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  If the Section 2255 motion, along with the files and records of the case, conclusively shows that petitioner is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be summarily denied.  *See* 28 U.S.C. § 2255(b).

**III. Analysis**

    **A.  Ineffective Assistance of Counsel**

Petitioner asserts claims for ineffective assistance of counsel based on: (1) his attorney's alleged failure to

investigate before recommending that he enter a guilty plea; (2) being forced to be represented by an attorney with an "irreconcilable conflict"; (3) his attorney's alleged failure to insist on a sentencing range of sixty to seventy months, which more closely aligned with his co-defendants' sentences; and (4) his attorney's failure to object when the court allegedly interfered with Mr. Parrott's allocution.[2]

Claims of ineffective assistance of counsel are governed by the well-settled standard adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim under *Strickland*, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 688. To demonstrate actual prejudice, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the *Strickland* analysis, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*,

---

[2] Petitioner was represented by Teresa Whalen during his guilty plea and sentencing.

466 U.S. at 688–89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must assess the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *See id.* at 697.

   1. **Investigation Prior to Guilty Plea**

   Petitioner argues:

> Counsel of record failed to investigate the case before the plea. Counsel of record did not go through Grand Jury Transcripts, DEA 6's ROI's debriefing statements of potential witnesses. Investigate the aforementioned documents to see if the Petitioner was implicated in the conspiracy as to substantial involvement. Counsel had an established duty to investigate . . . or to make a reasonable decision that makes particular investigations un[n]ecessary. Counsel was deficient in having Petitioner plead guilty and being exposed to unsubstantiated relevant conduct found by the court and not a jury.

(ECF No. 776, at 4).

6

This claim is belied by the record. "Absent extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy"). Petitioner has not presented any extraordinary circumstances warranting relief. The Rule 11 colloquy demonstrates his satisfaction with the performance of his counsel; that he was, in fact, guilty of every material element of the offense charged; and that he understood the charge against him and the potential sentence range. He also acknowledged that if the court accepted his guilty plea, there would be no trial of the charge against him and, instead, a date for sentencing would be set. (ECF No. 797-1, at 8). Petitioner made the following representations under oath during the Rule 11 proceeding on April 30, 2010:

> The Court: All right. Well, this is a tough one. Can you remember how many times you've spoken with Ms. Whalen about the plea agreement?

7

>    The Defendant: Quite a few.
>
>    The Court: Okay. Has she always had the time that you thought was necessary to talk with you about this case?
>
>    Defendant: Yes, ma'am.
>
>    The Court: Has she answered all of your questions?
>
>    Defendant: Yes, ma'am.
>
>    The Court: And are you satisfied with the help she has provided you in this case?
>
>    The Defendant: Yes, ma'am.

(*Id.* at 20).

Petitioner has not explained how any purported investigation into the grand jury transcripts, ROIs, or statements of potential witnesses would have affected the outcome of the case – and he cannot show prejudice arising from any such error in light of the representations he made under oath at the plea proceeding. Petitioner indicated that no one induced him to plead guilty. Moreover, in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), the Supreme Court explained that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." Consequently, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the

entry of the guilty plea." *Id.; see also Parham v. United States*, Civ. No. 5:11CV63-03-V, Crim. No. 5:08CR51, 2011 WL 1899773, at *5 (W.D.N.C. May 19, 2011) (*citing Tollett* for the same proposition).

Based on the foregoing, Petitioner has failed to demonstrate ineffective assistance of counsel on this basis.

### 2. Irreconcilable Conflict with His Attorney

Next, Petitioner asserts that he had an "irreconcilable conflict" with Ms. Whalen but that the court nevertheless forced him to be represented by her. (ECF No. 776, at 5). He argues: "where a court [] compels one charged with a grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict[,] it deprives him of the effective assistance of any counsel whatsoever." (*Id.*).

Petitioner's argument again is belied by the record. On April 28, 2010, Petitioner appeared before Magistrate Judge Connelly for a motions hearing pertaining Mr. Parrott's request to represent himself, which was made one week before his trial was set to begin. On April 29, 2010, Petitioner again appeared before Judge Connelly and indicated that he did not wish to be represented by Ms. Whalen. (*See* ECF NO. 786, at 3, Tr. Of Apr. 29, 2010 Hr'g.). Petitioner's motion was *granted* on April 29, 2010, except that the undersigned reserved decision on whether

or not Ms. Whalen would serve as stand-by counsel. (ECF No. 520). Petition entered a guilty plea the next day. (*See* ECF No. 528). Notably, at his plea hearing, the court inquired regarding the representation issue:

> Ms. Whalen: . . . I am technically not of counsel, I believe, representing Mr. Parrott, although I do agree that we have a signed plea agreement, and I did negotiate that with my client.
>
> The Court: Okay. Mr. Parrott, I know we were together yesterday, at which point I accepted -- or *I granted the motion for trial that you would be representing yourself. Now that things may have changed, shall we reconsider and have Ms. Whalen back in the case?*
>
> *The Defendant: Yes, ma'am.*
>
> The Court: Okay. Yeah. My thought was, Ms. Whalen, that that was for trial, and now that we're on a different track, I will rescind the withdrawal. Okay.

(ECF No. 781, at 2) (emphasis added). Moreover, as set forth above, at the Rule 11 hearing, Petitioner indicated his satisfaction with Ms. Whalen's representation. Accordingly, Petitioner's argument that he was *forced* into being represented by an attorney with whom he had an irreconcilable conflict is contradicted by the record and thus does not provide a basis for finding ineffective assistance of counsel.

### 3. Disparity in Sentences

Petitioner next argues that his co-defendants involved in the conspiracy were sentenced to "well below [his] sentence. Counsel of record was deficient as counsel for not insisting that the plea in this case be for 60-70 months." (ECF No. 776, at 7).

In the plea agreement - which the court determined Petitioner entered into knowingly and voluntarily – the parties stipulated to an adjusted offense level of 30. During sentencing, the court determined the guideline range to be 87 to 108 months. The Government recommended a sentence of 98 months, and the court sentenced Mr. Parrott to an imprisonment term of 90 months. Ms. Whalen did argue for a variance during sentencing and addressed what she thought "would be fair for [Mr. Parrott] in light of other defendants in the case." (ECF No. 782, at 6, Sentencing Tr.). Specifically, Ms. Whalen addressed the other defendants' respective sentences:

> Your Honor, the Government is asking for 98 months. I tried to do sort of an analysis of where everybody -- because there are so many defendants, and it's difficult to know, obviously, what was going on with each of them, but I can say that many of them that I see, excluding – and I put in my memos before, I think, Mr. Cox was sentenced to 168 months, but that seems to be the range of 24 months to Mr. Cox, 168 months. . . . Many of them that seemed to get in the higher range of my client's guideline range appear to have been -- well, there's

11

> John Cox, of course -- appear to have had career offender designations, including, I think, David Howard, who Your Honor gave -- well, he received 84 months. Peter Pervis was 120 months, I think. He was a career offender. And then some of the others were actually -- their involvement was not just, as my client was, sort of in -- in the middle, getting drugs from his brother, but they were also the sources of cocaine to the conspiracy, I believe, at least that was my assessment of their role in the [ ] conspiracy.
>
> For that reason, and for the fact that my client had demonstrated that he is a good employee, that he is a good father, good husband, family person, *I think those are reasons that Your Honor can take into consideration, in addition to the need to avoid unwarranted disparities, and sentence my client under the 87-month low end of the guideline range.*

(*Id.* at 24-25) (emphasis added).

Despite Petitioner's present claim to the contrary, the record amply demonstrates that his counsel made the court aware of his co-defendants' sentences and the need to avoid disparities. Insofar as Petitioner argues that Ms. Whalen provided deficient representation in "not insisting that the plea in this case be for 60-70 months," this argument is misplaced because regardless of what the parties would have agreed to, the sentencing determination remains with the judge. Thus, Petitioner cannot show that this would have affected his sentence.

Moreover, the court acknowledged at sentencing Ms. Whalen's argument regarding Petitioner's role in the conspiracy as compared to the other defendants:

> *Now, your role in this case, Ms. Whalen says, is, perhaps, less significant in some sense*, but let me remind you that the reason conspiracies are separately charged is because when people get together to do things illegally, that's more dangerous than individual action.  It's more likely to succeed.  Each individual person is less likely to back out because of that kind of herding instinct, the group manifestation of this, and because of your familial relationship with the person in this case the Government contends was the leader of this particular conspiracy, he trusted you.  You were more able to help him than, perhaps, some stranger might have been.
>
> So while you might have been a broker, you might not have instigated a lot of this, you were an important member in continuing this illegal conduct that I think all acknowledge started before you were released from your last sentence, so don't understate the role you played.  You gave them what they needed to continue themselves, and you were a knowing and willing participant, as has been acknowledged.

(*Id.* at 32-33) (emphasis added).  Finally, as indicated above, Petitioner's sentence was reduced to 72 months on March 20, 2015 pursuant to 18 U.S.C. § 3582(c).  Because Petitioner has failed to demonstrate any unprofessional errors by his counsel or prejudice resulting therefrom, his ineffective assistance claim cannot prevail.

13

### 4. Allocution

Finally, Petitioner argues that "the Court interfered with Petitioner[']s allocution." (ECF No. 776, at 8). Petitioner states that the undersigned did not allow him "to provide, speak, or present any information to mitigate the sentence in this case." (*Id.*). Here too, the record contradicts Plaintiff's contention. The right of allocution derives from Fed.R.Crim.P. 32 (i)(4)(A)(ii), which states in relevant part: "Before imposing sentence, the court must: (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." This is precisely what happened at the sentencing on September 12, 2011. After hearing from the prosecutor and defense counsel at sentencing, the court specifically addressed Petitioner and informed him that he had an opportunity to address the court. (*See* ECF No. 797-2, at 11 ("Mr. Parrott, you do have an opportunity now, yourself, to tell me anything that you want me to know.")). Mr. Parrott then addressed the court discussing his upbringing, his family, and his remorse. (*Id.* at 11-15). The court gave Petitioner an opportunity to allocute, thus there was no error on this basis. Accordingly, any argument that his counsel was deficient for failing to object regarding this purported error and for not raising this issue on appeal is unavailing.

**B.    Petitioner's Motion for Leave to Conduct Discovery**

Petitioner seeks the following discovery related to his Section 2255 petition: (1) grand jury transcripts; (2) all motion hearing transcripts; (3) DEA-6 (ROI's) Reports of Investigation; and (4) plea and sentencing transcripts.  (ECF NO. 780, at 1).

Rule 6(a) of the Rules Governing Section 2255 Proceedings states that "[a] party may invoke the processes of discovery . . . if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  In *United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004), the Fourth Circuit cited the following as the proper standard in considering such claims: "good cause for discovery exists when a petition for habeas corpus establishes a prima facie case for relief."  (internal citations omitted). Discovery is warranted "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracey v. Gramley*, 520 U.S. 899, 908-09 (1997).

Mr. Parrott has failed to make the required showing here. Petitioner fails to articulate a plausible theory of ineffective assistance of counsel, and thus cannot establish good cause for discovery.  Accordingly, this motion will be denied.

### C. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Upon review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, the court will decline to issue a certificate of appealability on the issues which have been resolved against Petitioner.

### IV. Conclusion

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence will be denied. Petitioner's motion for leave to conduct discovery will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
